UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSHUA K.,[1]

                                     Plaintiff,        Case # 19-cv-66-FPG

v.                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.
_____

**INTRODUCTION**

Plaintiff Joshua K. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") on January 8, 2015, alleging disability beginning October 17, 2014. Tr.[2] 152-60. After the Social Security Administration ("SSA") denied his claim, Tr. 59-66, 67-72, Plaintiff appeared, with counsel, at a hearing on October 12, 2017 before Administrative Law Judge Larry Banks (the "ALJ"). Tr. 30-57. On January 22, 2018, the ALJ issued an unfavorable decision. Tr. 9-22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-5. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. Plaintiff filed a reply. ECF No. 17. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

**I.   District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.   Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the alleged onset date and through the date last insured. Tr. 11. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; substance use disorder in remission; and obesity. Tr. 11. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 12-14. Next, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all exertional levels, with the following additional limitations:

> The claimant is limited to work requiring understanding, remembering, and carrying out simple instructions with no production rate, and with few, if any, work place [sic] changes. The claimant should have no more than occasional contact with supervisors, no more than incidental interaction with coworkers (i.e., very little, if any, contact to perform work related duties), and no contact with the public with respect to performing work related duties. The claimant's ability to appropriately adapt or manage oneself is limited to the performing of tasks that do not exceed the stress level of unskilled work. Due to concentration and focus problems, the claimant would be off task less than 5% of the workday.

Tr. 14-20.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. Tr. 20-21. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, and therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 21-22.

**II.    Analysis**

Plaintiff argues that (1) the ALJ's conclusion that Plaintiff would be off task less than five percent of the workday was unsupported by substantial evidence and (2) the ALJ's finding that Plaintiff could tolerate work that does not exceed the stress level of unskilled work was

unsupported by substantial evidence. ECF No. 11-1 at 8-14. Because the Court agrees that the ALJ's RFC indicating that Plaintiff would be off task for less than five percent of the workday was not supported by substantial evidence, the Court will not address Plaintiff's remaining argument.

Specific RFC assessments, like percentage of time off-task, must be based on evidence in the record, not on an "ALJ's own surmise." *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour" because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday").

"Case law from this District reflects that if an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation." *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at \*4 (W.D.N.Y. Dec. 8, 2020). The Court addressed the precise issue presented here in *Wouters v. Comm'r of Soc. Sec.*, No. 19-CV-610-FPG, 2020 WL 2213896 (W.D.N.Y. May 7, 2020), and concluded that the ALJ's RFC limiting plaintiff to being off-task less than five percent of the time was not supported by substantial evidence where it was not tied to any medical evidence. *Id.* ("Although much of the RFC here is detailed and well-reasoned, the ALJ's stipulation that Plaintiff would be off-task less than five percent of the time is not."). Similarly, here, the ALJ does not point to any evidence in the record suggesting why Plaintiff would be off task for this specific percentage of time. *Milliken v. Berryhill*, No. 1:16-CV-00297 EAW, 2017 WL 3208635, at \*17 (W.D.N.Y. July 28, 2017) ("The ALJ does not point to any indication in the record as to why this

4

particular duration would permit Plaintiff to finish forty hours of light work a week."). "Without some explanation from [the ALJ] to the tether between her RFC and the . . . medical opinions or statements from plaintiff, the RFC appears to be based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, No. 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018); *see Silkowski v. Commissioner*, No. 18-CV-6727, 2020 WL 1493951, at *6 (W.D.N.Y. Mar. 27, 2020) (where doctor opined that the plaintiff required "frequent opportunities to alternate between sitting, standing and walking," the ALJ erred in assessing an RFC requiring the plaintiff to change position every 60 minutes for up to five minutes without leaving the workstation, because the ALJ "provided no . . . tether between 'frequent' and 'every 60 minutes for up to 5 minutes.'" (quoting another source)).

Indeed, no medical provider opined that Plaintiff would be off task less than five percent of the time. Nor, for that matter, did any medical provider find that Plaintiff would have any specific off task limitation. But the ALJ did afford "moderate weight" to two medical opinions that indicated that Plaintiff would have "moderate limitations" in several critical functional areas. For example, the ALJ afforded "moderate weight" to an April 7, 2016 opinion from John Napoli, M.D., in which Dr. Napoli indicated that Plaintiff would have moderate limitations in carrying out instructions, maintaining attention and concentration, interacting appropriately with others, maintaining socially appropriate behavior, and ability to function in a work setting at a consistent pace. Tr. 19, 376. The ALJ also afforded "moderate weight" to a December 2, 2016 opinion from Nurse Practitioner Annmarie Kenny, who opined that Plaintiff had moderate limitations in understanding, remembering, and carrying out instructions, maintaining attention and concentration, making simple decisions, and ability to function in a work setting at a consistent pace. Tr. 19, 380. Although terms like "moderate limitations," are inherently vague, in this

context, it is at least plausible that the opinions—which the ALJ gave moderate weight—suggest that Plaintiff would be more than five percent off task per day. *See Rowling v. Colvin*, No. 16-CV-6577-CJS, 2018 WL 1151106, at *8 (W.D.N.Y. Mar. 5, 2018) (internal quotation marks omitted) (noting that terms like "moderate" are "inherently vague").

In its response to Plaintiff's argument that this specific time off task is not supported by the record, the Commissioner points to generalizations about Plaintiff's mental health such as that he indicated he could finish what he started, he had a normal attention and concentration examination, engaged in many activities, and attended college. ECF No. 14-1 at 16. Yet none of these generalizations were included in the ALJ's decision as support for the specific off task assessment nor do they translate into a finding that Plaintiff would be off task five percent of the day. *See Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019) ("Nor do any other treatment records indicate this limitation (or any limitation with respect to the amount of time that Elder would be on or off task). Rather, Dr. Patel noted more generally that Elder had difficulty maintaining attention and concentration, and Drs. Liu and Ajtai reached similar conclusions. Only the ALJ imposed specific time frames on Elder's ability to stay on task."). If the ALJ believed that an off-task limitation was necessary, he should have obtained a medical opinion supporting such a limitation. *Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *5 (W.D.N.Y. Apr. 28, 2020).

Citing *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016) (summary order), the Commissioner argues that that an off-task limitation need not track medical source language. ECF No. 14-1 at 15. In *Johnson*, a summary order, the Second Circuit concluded that the ALJ's finding that plaintiff would be 10% slower than average was supported by substantial evidence. Although the RFC did not track any specific medical opinion, the Second Circuit found that there was

6

substantial evidence in the record that plaintiff could perform light work at a "slightly lower" than average pace. *Id.* at 47.  Here, however, there is no corresponding substantial evidence that Plaintiff would off task less than the amount the ALJ specified.

The ALJ's treatment of the evidence and specific off-task conclusion is problematic where, as here, the ALJ discounted all of the opinions in the record. *Michelle A.*, 2020 WL 7223235, at *4 ("The need for more specific evidence as to the amount of time plaintiff would be off-task is especially relevant here, since the ALJ gave diminished weight to all medical opinions in the record."). To be sure, an ALJ is free to choose between properly submitted medical opinions, but she may not substitute her own lay opinion for those of medical experts. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  The off-task component of the RFC here was not tethered to any particular medical opinion evidence and the ALJ gave diminished weight to all of the opinions she addressed. Tr. 18-20.  Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further. *See Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019).

The ALJ's error was not harmless.  The vocational expert testified that "if an individual is off task over 5%, again over and above the customary breaks, consistently, they would not be able to maintain competitive employment." Tr. 53.  In other words, if Plaintiff would in fact be off task more than the five percent allocated by the ALJ, he may be considered disabled. *Elder*, 2019 WL 6320355, at *5-6 ("At best, then, the ALJ's conclusion comes from whole cloth. At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 11, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 14, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 25, 2021
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court